# Exhibit B

Electronically Received 01/16/2024 04:45 PM

1  JAMIE CROOK (SBN 245757)
   Chief Counsel
2  ASAF ORR (SBN 261650)
   Assistant Chief Counsel
3  ALEXIS ALVAREZ (SBN 281377)
   Associate Chief Counsel
4  LOGAN TALBOT (SBN 300591)
   Senior Staff Counsel
5  ELIANA MATA (SBN 327845)
   Staff Counsel
6  CALIFORNIA CIVIL RIGHTS DEPARTMENT
7  2218 Kausen Drive, Suite 100
   Elk Grove, CA 95758
8  Telephone: (916) 964-1925
   Facsimile: (888) 382-5293
9
   Attorneys for Plaintiff
10 CALIFORNIA CIVIL RIGHTS DEPARTMENT

11 (Fee Exempt, Gov. Code, § 6103)

12 [Additional counsel continued below]

13

14        **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15        **IN AND FOR THE COUNTY OF LOS ANGELES**

16 CALIFORNIA CIVIL RIGHTS DEPARTMENT,   Case No.  21STCV26571
   an agency of the State of California,
17
                                  Plaintiff,   Judge: Honorable Barbara M. Scheper
18                                             Dept: 30
           vs.
19                                             ÙÜÖÒÙÁJÞÁ
   ACTIVISION BLIZZARD, INC.; BLIZZARD        [~~PROPOSED~~] CONSENT DECREE
20 ENTERTAINMENT, INC.; and ACTIVISION
   PUBLISHING, INC., and DOES ONE through
21 TEN, inclusive,
                                  Defendants.
22 ACTIVISION BLIZZARD, INC., BLIZZARD
   ENTERTAINMENT, INC. and ACTIVISION
23 PUBLISHING, INC.,
                          Cross-Complainants,
24
           vs.
25
   GARY D. NELSON ASSOCIATES INC., and
26 CAREER GROUP, INC.,

27                          Cross-Defendants.

28

─────────────────────────────────────
[~~PROPOSED~~] CONSENT DECREE

1  JUAN GAMBOA (SBN 327352)
   Staff Counsel
2  IRENE MEYERS (SBN 340312)
   Staff Counsel
3  CALIFORNIA CIVIL RIGHTS DEPARTMENT
   2218 Kausen Drive, Suite 100
4  Elk Grove, CA 95758
   Telephone:  (916) 964-1925
5  Facsimile:  (888) 382-5293

6
   JAHAN C. SAGAFI (SBN 224887)
7  MOIRA HEIGES-GOEPFERT (SBN 326861)
   ADAM L. KOSHKIN (SBN 320152)
8  OUTTEN & GOLDEN LLP
   One California Street, 12th Floor
9  San Francisco, CA 94111
   Telephone:  (415) 638-8800
10 Facsimile:  (415) 638-8810
   Email: jsagafi@outtengolden.com
11 Email: mhg@outtengolden.com
   Email: akoshkin@outtengolden.com
12

13 CHAUNIQUA D. YOUNG*
   REBECCA L. PATTIZ *
14 AMY L. MAURER*
   EMMA R. JANGER*
15 OUTTEN & GOLDEN LLP
   685 Third Avenue, 25th Floor
16 New York, NY 10017
   Telephone:  (212) 245-1000
17 Facsimile:  (646) 509-2005
   Email: cyoung@outtengolden.com
18 Email: rpattiz@outtengolden.com
   Email: ejanger@outtengolden.com
19 Email: amaurer@outtengolden.com
20

21 DANIEL S. STROMBERG*
   HANNAH COLE-CHU*
22 OUTTEN & GOLDEN LLP
   1225 New York Avenue NW, Suite 1200B
23 Washington, DC 20005
   Telephone: (202) 914-5097
24 Facsimile:  (202) 847-4410
   Email: dstromberg@outtengolden.com
25 Email: hcolechu@outtengolden.com
   *Admitted Pro Hac Vice
26 Attorneys for Plaintiff
   CALIFORNIA CIVIL RIGHTS DEPARTMENT
27

28

**INTRODUCTION**

1.      Following an investigation, in July 2021, the California Civil Rights Department ("**CRD**"), previously called the Department of Fair Employment and Housing ("**DFEH**"), filed an employment discrimination complaint alleging unlawful employment practices based on sex under the Fair Employment and Housing Act ("**FEHA**") and the California Equal Pay Act ("**EPA**") against Defendants Activision Blizzard, Inc., Blizzard Entertainment, Inc., and Activision Publishing, Inc. (collectively, "**Activision Blizzard**").  In bringing this litigation, CRD sought relief in the public interest for the State of California and on behalf of a group or class of women employees and contingent and temporary workers for Activision Blizzard.

2.      CRD and Activision Blizzard (collectively the "**Parties**" and each a "**Party**") now agree that it is in each side's best interests, and in the public interest, to fully and finally resolve this matter on mutually agreeable terms.

3.      The Parties jointly seek approval of this [Proposed] Consent Decree ("**Decree**"), which represents the compromise and settlement of all claims—which Activision Blizzard strongly disputes and the Parties recognize would require protracted and additional costly litigation to resolve.  For the purposes of effectuating this settlement only, the Parties hereby agree to the jurisdiction of this Court over the Parties and the subject matter of this action, entitled *California Rights Department v. Activision Blizzard, Inc., Blizzard Entertainment, Inc., and Activision Publishing, Inc., and Does One through Ten, inclusive*, Los Angeles County Superior Court Case No. 21STCV26571 (the "**Action**").

4.      This Decree does not constitute an adjudication or finding by this Court on the merits of any of the allegations asserted in the Action.  Each Defendant expressly and unequivocally denies that it engaged in any unlawful conduct asserted in the Action—including but not limited to subjecting any individual, group, or class of individuals to gender-based harassment, related retaliation, or gender discrimination, including as to pay, promotions, and/or terminations—failed to maintain records, or in any way required an unlawful waiver of rights.  Defendants deny all allegations of wrongdoing, liability, and damages set forth in CRD's Complaint, First Amended Complaint, and the concurrently filed Second Amended Complaint whether arising under the FEHA, the California Labor Code, or analogous federal and local laws, and deny any group or class discrimination.  Defendants deny that CRD complied

with its statutory pre-filing requirements when it initiated the Action. Nothing contained in this Decree shall be construed as an admission of liability on the part of Activision Blizzard, or any entity of Activision Blizzard.

5. No court or any independent investigation has substantiated any allegations that: there has been systemic or widespread sexual harassment at Activision Blizzard; that Activision Blizzard senior executives ignored, condoned, or tolerated a culture of systemic harassment, retaliation, or discrimination; or that Activision Blizzard's Board of Directors, including its Chief Executive Officer, Robert Kotick, acted improperly with regard to the handling of any instances of workplace misconduct.

6. Activision Blizzard has maintained positive measures including its continuous review and improvement of company practices and publicly publishing its first annual transparency report on May 31, 2023, which provides detailed data about its efforts to prevent misconduct, harassment, discrimination, and retaliation.

7. Gilbert Casellas, the former Chair of the United States Equal Employment Opportunity Commission ("EEOC"), conducted a review of Activision Blizzard's policies, practices, conduct, and certain company complaint data, and reported there was no widespread harassment or recurring pattern or practice of gender harassment at Activision Blizzard.

8. Activision Blizzard publicly released its Pay Equity Review for 2020, which states that that there is no gender-based pay disparity disadvantaging U.S.-based women at Activision Blizzard, and publicly released its Global Pay Equity Reviews for 2021 and 2022, which state that there is no gender-based pay disparity disadvantaging women globally.

9. Activision Blizzard maintains that its data during relevant years reveals that women are promoted more frequently and faster than men.

10. Pursuant to a compromise in order to resolve the Action, CRD is filing along with the Decree a Second Amended Complaint that withdraws, among other allegations and causes of action, the First Amended Complaint's Fifth Cause of Action – "Employment Discrimination – Because of Sex – Harassment."

11. The Parties agree for settlement purposes only that the Court may approve and enter the Decree without the procedures that apply to approval of a proposed private class action settlement

because this is not a class action pursuant to California Code of Civil Procedure section 382. FEHA authorizes CRD to resolve this litigation through a mutually negotiated settlement that provides relief to CRD and the group or class of workers on whose behalf CRD sought to recover monetary and injunctive relief. The Parties agree for the purposes of settlement only that terms of the Decree are fair, adequate, and reasonable and conform to California law.

12.     Accordingly, CRD and Activision Blizzard, as well as Activision Blizzard subsidiaries that operate in the State of California (collectively, "Defendants"), have entered into this binding settlement and hereby stipulate and agree to entry of this Decree to completely and finally resolve this Action and related matters identified in Section V herein.

13.     Therefore, the Parties request the Court's entry of this Decree.

**NOW, THEREFORE, IT IS DECREED ADJUDGED, AND ORDERED AS FOLLOWS:**

## I.     PARTIES

14.     CRD is a state agency charged with investigating and prosecuting civil rights enforcement actions. (Gov. Code, § 12930, subd. (f)(1)-(5).) As set forth in Government Code section 12900 et seq., CRD is charged with enforcing FEHA, including initiating and investigating complaints on behalf of itself and persons alleged to be aggrieved by discriminatory employment practices. (Gov. Code, §§ 12920.5, 12930, 12961, and 12965.) CRD is additionally authorized to investigate and prosecute claims under Labor Code section 1197.5, which prohibits employers from paying employees of one sex less than employees of another sex for substantially similar work. (Gov. Code, § 12930, subd. (f)(5).)

15.     Defendant Activision Blizzard, Inc., is now and was, at all times relevant to the Action, a Delaware corporation operating in and under the laws of the State of California and conducting business in Los Angeles, California. Activision Blizzard, Inc.'s corporate headquarters are located in Santa Monica, California. Activision Blizzard, Inc. conducts business through its subsidiaries, which include Defendants Blizzard Entertainment, Inc. ("**Blizzard Entertainment**") and Activision Publishing, Inc. ("**Activision Publishing**").

16.     Defendant Blizzard Entertainment is now and was, at all times relevant to the Action, a Delaware corporation operating in and under the laws of the State of California and conducting business

1  in Los Angeles, California.  Blizzard Entertainment's corporate headquarters are located in Irvine,

2  California.

3      17.    Defendant Activision Publishing is now and was, at all times relevant to the Action, a

4  Delaware corporation operating in and under the laws of the State of California and conducting business

5  in Los Angeles, California.  Activision Publishing's corporate headquarters are located in Santa Monica,

6  California.

7      18.    The Parties to this Decree are CRD and Defendants.  This Decree shall be binding on and

8  enforceable against Defendants and their respective officers, directors, agents, and assigns.

9              II.    **PROCEDURAL HISTORY**

10     19.    CRD's Director filed a complaint of Group or Systemic Investigation and Director's

11 Complaint for Group/Class Relief against Blizzard Entertainment on October 12, 2018, an Amended

12 Director's Complaint on October 29, 2018, adding Activision Blizzard, Inc., and a Second Amended

13 Director's Complaint on December 7, 2018, adding Activision Publishing (together the "**Director's**

14 **Complaint**").  The Director's Complaint alleged that Activision Blizzard engaged in discrimination

15 against female employees on the basis of sex/gender, including failing to hire, select, or employ persons

16 because of their sex, as well as discriminating in compensation or in the terms, conditions, and

17 privileges of employment due to their sex.  The Director's Complaint further alleged that Activision

18 Blizzard failed to take all reasonable steps to prevent unlawful discrimination, sexual harassment, and

19 retaliation.

20     20.    After conducting an investigation, CRD filed its Complaint in this instant matter on July

21 20, 2021, and a First Amended Complaint on August 23, 2021.

22     21.    Defendants filed their Answer to the First Amended Complaint on March 17, 2022,

23 denying the allegations therein.  On May 9, 2022, Defendants filed a First Amended Answer.

24     22.    Concurrent with the filing of this Decree, by stipulation of the Parties, CRD files a

25 Second Amended Complaint.  The Second Amended Complaint will be effective only if the stipulation

26 is approved by the Court and the Decree is approved.  Otherwise, the First Amended Complaint shall

27 remain the operative complaint.

28     23.    In October 2022, the Parties engaged in three days of mediation.  Since that time, the

Parties continued informal settlement negotiations with the assistance of the neutral third-party mediator, which resulted in the execution of a Settlement Agreement on December 11, 2023. This Decree follows from that Settlement Agreement.

### III.    PURPOSE

24. The purposes of the Parties in entering into this Decree are the following:

a. to resolve all allegations, issues, claims, litigation, or proceedings arising from acts that have occurred up until the entry of the Decree as asserted in or reasonably related to the Second Amended Complaint and the Action, according to the terms in this Decree;

b. to resolve the related federal proceeding *U.S. Equal Employment Opportunity Commission v. Activision Blizzard, Inc., et al.*, U.S.D.C. C.D. Cal. Case No. CV 21-7682-DSF (JEMx), and all related appeals thereto (9th Cir. Case Nos. 22-55060 and 22-55587) (collectively, the "**EEOC Action**");

c. to resolve *Skinnell v. California Civil Rights Department F/K/A California Department of Fair Employment and Housing*, Sacramento Superior Court Case No. 34-2022-80004057-CU-WM-GDS ("**PRA Action**");

d. to avoid the time, expense, and uncertainty of further litigation;

e. to provide monetary relief and injunctive remedies for the benefit of the group or class on whose behalf CRD brought suit;

f. to ensure employment practices in ongoing compliance with the FEHA and California Labor Code; and

g. to provide CRD's attorney fees and costs pursuant to Government Code section 12965, subdivision (c)(6).

### IV.    SCOPE AND DURATION OF JURISDICTION

25.    The Parties have agreed, for the purpose of settlement, that the Court has jurisdiction over the Parties and has subject matter jurisdiction over the Action, and thus to enter this Decree, under Article VI, section 10 of the California Constitution, Code of Civil Procedure section 410.10, and Government Code sections 12930, subdivision (h) and 12965, subdivision (a)(1).

26.    The Parties accordingly submit to the jurisdiction of the Court over the Parties, and the

subject matter of this Action, and agree to the power of this Court to enter a Decree to effectuate this settlement.

27.     This Decree shall become effective immediately on the date on which this Decree has been entered by the Court ("**Effective Date**").

28.     This Decree shall remain in effect for three (3) years after the Effective Date.  Absent extension, at the end of the 3-year term this Decree shall expire on its own.

29.     This Decree, however, shall not expire while any motion or other proceeding to enforce it is pending before the Court.

30.     The Court retains jurisdiction over this Action during the duration of this Decree and will have all available powers to enforce this Decree, including but not limited to monetary sanctions, injunctive relief, and extension of the term of the Decree, and the Parties reserve their rights to seek relief from the Court, including such remedies, in the event of a breach of the terms of the Decree.  The Action may be administratively closed, but the Second Amended Complaint shall not be dismissed during the Decree's term.

31.     Upon termination of the Decree, CRD will dismiss the Action in its entirety with prejudice on CRD's own behalf ("**Expiration Date**").

## V.     DISMISSAL OF APPEALS AND RELATED ACTIONS

32.     Concurrent with the filing of this Decree, CRD shall seek a stay of its related appeals arising from *U.S. Equal Employment Opportunity Commission v. Activision Blizzard, Inc., et al.*, U.S.D.C. C.D. Cal. Case No. CV 21-7682-DSF (JEMx), (9th Cir. Case Nos. 22-55060 and 22-55587), in the EEOC Action, and, within five (5) court days of the entry of this Decree by this Court, CRD will dismiss these appeals.[1]  Each Party will bear its own attorneys' fees and costs relating to the EEOC Action.

33.     Concurrent with the filing of this Decree, the Parties shall stipulate to stay the PRA Action pending entry of the Decree, and settlement administration, as set forth herein.  Defendants will

---

[1] The Parties agree that the Ninth Circuit's decision on the pending appeals, or its refusal to stay the EEOC Action, will have no impact on this Decree or the Parties' Settlement Agreement, which will remain in full effect.

cause dismissal of the PRA Action with prejudice within five (5) court days of the conclusion of the settlement administration. Defendants further agree that upon the filing of this Decree, all pending requests for public records from CRD that have been submitted by any person or entity acting at the direction of any Defendant will be stayed and, upon, conclusion of settlement administration, withdrawn. Each side will bear its own fees and costs relating to the PRA Action and will forgo pursuit of any other relief relating to the PRA Action.

## VI. **ELIGIBLE COVERED INDIVIDUALS**

34. The "**Covered Period**" is October 12, 2015 through December 31, 2020.

35. The "**Covered Employee Class**" comprises all female[2] employees of Defendants who worked in California from October 12, 2015 through December 31, 2020. The women who make up the Covered Employee Class shall be referred to as a "**Covered Employee(s)**."

36. The "**Covered Contractor Worker Class**" comprises all female employees of third-party labor contractors ("**Temporary Staffing Agencies**") assigned to work and who worked at any Defendant entity in California for an aggregated total of at least ninety (90) days between October 12, 2015 through December 31, 2020. The women who make up the Covered Contractor Worker Class shall be referred to as a "**Covered Contractor Worker(s)**."

37. The women who make up the Covered Employee Class and Covered Contractor Worker Class defined in Paragraphs 35 and 36 shall collectively be referred to as the "**Covered Individuals**."

## VII. **MONETARY RELIEF**

38. In settlement of this instant Action, Defendants shall pay a "**Maximum Settlement Amount**" of $45,750,000.00 dollars. The Maximum Settlement Amount will be used to compensate Covered Individuals as set forth below in Paragraph 41 and to pay for the costs of settlement administration.

39. The Maximum Settlement Amount excludes the employer's portion of any state, local, and/or federal payroll taxes due for any portion of payments to Covered Individuals that is treated as

---

[2] For purposes of the Decree, the terms "female(s)," "woman," and "women" are used for ease of reference and are inclusive of anyone who, according to their employment records, has self-identified to Defendants or the Temporary Staffing Agencies as a cisgender woman or transgender woman at any time during the Covered Period.

1  wage income; attorneys' fees and costs to paid to CRD; and the costs of implementation of injunctive

2  relief set forth in Section X.

3      40.    Defendants shall transfer, via wire transfer(s), the Maximum Settlement Amount and

4  employer's portion of any state, local, and/or federal payroll taxes due for any portion of payments to

5  Covered Individuals that is treated as wage income, within fifteen (15) days of the Settlement

6  Administrator (as described in Section XII) providing the Total Individual Payment (as defined in

7  Paragraph 41(d)) and employer's share of tax payment.

8      41.    <u>Allocation of Total Individual Payments to Covered Individuals</u>:  The Maximum

9  Settlement Amount *minus* the costs of settlement administration equals the "**Net Settlement Amount**,"

10  and shall be distributed to Covered Individuals through a payment allocation process, as follows:

11      a.  <u>Identification of Covered Individuals</u>:  Within thirty (30) days of the date on which the

12      Settlement Administrator is engaged after the Court enters this Decree, Defendants will

13      provide the Settlement Administrator with the information relevant to the calculation of

14      payments and implementing the terms of the Decree (including names, date of

15      employment, social security numbers, available contact information, and information

16      regarding any release entered into) for the Covered Employee Class.  Within five (5)

17      court days of entry of the Consent decree, Defendants will contact the Temporary

18      Staffing Agencies that employed the Covered Contractor Worker Class and work in good

19      faith to promptly secure the information relevant to the calculation of payments and

20      implementing the terms of the Decree (including names, date of employment, social

21      security numbers, available contact information, and information regarding any release

22      entered into) for the Covered Contractor Worker Class.  CRD will work in good faith

23      with Defendants to assist in securing this information.  Defendants will use their best

24      efforts to provide such information to the Settlement Administrator within sixty (60) days

25      of the date on which the Settlement Administrator is engaged.  The Parties agree to work

26      in good faith to resolve any deficiencies in data or information from the Temporary

27      Staffing Agencies relating to the Covered Contractor Worker Class.

28      b.  <u>Minimum Payment Calculation</u>:  Each Covered Employee and each Covered Contractor

Worker will receive a Minimum Payment in an amount to be determined by CRD after analysis of data to be provided by Defendants and the Temporary Staffing Agencies.

    i.    The Minimum Payment amount for Covered Employees may differ from the Minimum Payment amount for Covered Contractor Workers. Those numbers will be provided to the Court through a supplemental submission once all Covered Individuals are identified.

    ii.    The sum of all Minimum Payments will equal the "**Minimum Payment Fund**."

c.    <u>Tenure Payment Calculation</u>: The Tenure Fund will equal the Net Settlement Amount minus the Minimum Payment Fund and a $1,000,000 Set-Aside Fund that the Settlement Administrator may use to adjust payment amounts in response to disputes pursuant to Paragraph 46. The Tenure Payment for each Covered Individual will be calculated as follows:

    i.    Each Covered Individual will receive 2.0 points for each pay period she worked as an employee of Defendants during the Covered Period.

    ii.    Each Covered Individual will receive 1.0 point for each pay period she worked as a contractor with Defendants during the Covered Period.

    iii.    The Settlement Administrator will allocate to each Covered Individual a Tenure Payment equal to the Tenure Fund multiplied by a fraction comprising the total number of points assigned to that Covered Individual divided by the total number of points assigned to all Covered Individuals.

d.    <u>Total Individual Payments</u>: Each Covered Individual's "Total Individual Payment" shall equal (1) her Minimum Payment <u>plus</u> (2) her Tenure Payment <u>minus</u> (3) her Offset Deduction, if any, as set forth in Paragraph 41(e) <u>plus</u> (4) her Reallocation Payment as set forth in Paragraph 41(f), if any.

e.    <u>Offset Deduction Calculation</u>:

    i.    The Minimum Payment plus Tenure Payment to any Covered Individual who signed, before the date of the filing of the Decree, an agreement with any of Defendants that purports to release any or all claims asserted in the Action, to the

11

extent that the released time period overlaps with the Covered Period ("**Separate Release Signatories**") and to the extent the previously released claims overlap with the Released Claims, will be subject to an Offset Deduction.

    ii.  The Offset Deduction will equal 2.0 times the amount of any payment the individual already received in exchange for releasing claims, up to a maximum of her Minimum Payment. Notwithstanding any Offset Deduction up to the Minimum Payment, the Covered Individual will receive her Tenure Payment.

    iii.  The Parties agree that any payment made to any Separate Release Signatories pursuant to this Settlement Agreement is not intended to be an indication about the enforceability of Defendants' releases.

  f.  <u>Reallocation Payments</u>: The sum of all Offset Deductions shall be allocated to all Covered Individuals in proportion to the difference between their Individual Tenure Payments and their individual Offset Deductions. For example, someone with a Tenure Payment of $8 and an Offset Deduction of $2 will receive twice as much from the Reallocation Fund as someone with a Tenure Payment of $3 and no Offset Deduction (because $8 minus $2 is $6, which is twice as large as $3 minus $0 ($3).

42.  <u>Redistribution Fund and Cy Près Residual Fund</u>:

  a.  Any funds remaining in the Net Settlement Fund following the allocation process set forth in Paragraph 41 above, including any payment allocations to Covered Individuals who fail to negotiate their settlement payments within the one hundred eighty (180) day deadline and any money remaining in the Set-Aside Fund, will be allocated to a Redistribution Fund. The Settlement Administrator will allocate the Redistribution Fund through a second payment to all participating Covered Individuals, in proportion to their original Total Individual Payments.

  b.  All participating Covered Individuals who receive a second payment from the Redistribution Fund shall have one hundred eighty (180) days to deposit or cash that check.

  c.  After the second distribution set forth in Paragraph 42(a) is completed, the value from

any remaining uncashed checks will be allocated to the Cy Près Residual Fund, for cy près charitable organizations identified by CRD that have a primary mission either (a) to promote employment rights for workers in California, and/or (b) to advance the interests of women workers in technology industries.

43. <u>Tax Allocation</u>:

a. Payments to Covered Individuals under Paragraph 41 and 42 shall be allocated equally between wage and non-wage income.

b. The Parties make no representations or warranties with respect to tax consequences of any payment under this Decree, do not intend anything contained in this Decree to constitute advice regarding taxes or taxability, and nothing in this Agreement may be relied upon as such. CRD and Covered Individuals shall be solely responsible for correctly characterizing any compensation received under this Decree on their respective personal income tax returns for tax purposes, and paying all appropriate taxes due and penalties assessed on any and all amounts paid to them under this Decree. Covered Individuals who opt in, by accepting their Total Individual Payment, will hold the Parties free and harmless from and against any claims resulting from treatment of such payments as non-taxable damages, including the treatment of such payment as not subject to withholding or deduction for payroll and employment taxes.

## VIII. <u>NOTICE</u>

44. The Settlement Administrator will provide each Covered Individual notice of the Settlement via individualized notice ("**Notice**"), in substantially similar form as the Notice hereto as Exhibit A. The Notice shall be sent via mail, email, and text message, to the extent such contact information exists for any Covered Individual. Mailed notices will be sent with the Covered Individual's Individual Settlement Payment via an appropriately secure method consistent with the Settlement Administrator's recommendation. The Notices and Covered Individual's Individual Settlement Payment will be sent within fifteen (15) days of receipt of the wired funds for such payments, consistent with Sections VII and XII.

45. The Notice will:

1      a.   Provide the following information for each Covered Individual:

2          i.   Dates of employment or contract work during the Covered Period

3         ii.   Job title(s) during the Covered Period

4       iii.   Name of employer(s) during the Covered Period

5       iv.   Status as employee or contractor during the Covered Period

6        v.   Number of Points for Tenure Payment

7       vi.   Minimum Payment

8      vii.   Estimated Tenure Payment

9     viii.   Calculated Offset Deduction

10      ix.   Reason for Offset Deduction (if any)

11       x.   Estimated Reallocation Payment

12      xi.   Total Estimated Individual Payment amount

b.   Summarize the claims asserted under the Second Amended Complaint and included within the Covered Individual Release (as defined in Paragraph 52) to be enclosed, specifically recite that the Court did not rule on the merits and there has been no finding or admission of liability, and explain the process by which a Covered Individual may dispute the time period(s) listed on her Notice.

46.    If a Covered Individual wishes to dispute the time period(s) listed on her notice, she must produce appropriate evidence to the Settlement Administrator, consistent with the procedures set forth in the Notice. Defendants' records will be presumed determinative for Covered Employees and the records of the relevant Temporary Staffing Agencies will be presumed determinative for Covered Contract Workers, but the Settlement Administrator will have discretion to make the final decision as to each Covered Individual's dates based on any evidence properly submitted.

47.    The Covered Individual will be deemed to have fully participated in the monetary recovery provisions of the Decree by depositing or cashing the applicable Total Individual Payment within one hundred eighty (180) days of the date of the check, and in doing so, the Covered Individual will release claims according to the Covered Individual Release that is substantially similar to Exhibit B. The Notice so indicates.

48.     Any Covered Individual who fails to deposit or cash the Total Individual Payment within one hundred eighty (180) days of the date of the check will be deemed not to have participated in the monetary recovery provisions of the Decree and not to have released any claims.  As set forth in Paragraph 42, her Total Individual Payment will be allocated to the Redistribution Fund.

49.     If any Notice and Total Individual Payment is returned as undeliverable, the Settlement Administrator shall search the National Change of Address database again for a more current address of the Covered Individual and re-mail the Notice and Total Individual Payment to any alternative or updated address that is located (if located), within fourteen (14) days of the Total Individual Payment being returned as undeliverable.  If an alternative address cannot be located for a Covered Individual, her allocated payment(s) shall be redistributed, as if she had not cashed or deposited them, consistent with Paragraph 42.

## IX.     RELEASES

50.     This Decree fully and completely and finally resolves all allegations, issues and claims, litigation, or proceedings, arising from acts that occurred through the entry of the proposed Consent Decree, as asserted, or reasonably related to, any claims made in the Action, as set forth herein.

51.     CRD's Release:  Through this Decree, CRD fully and finally releases Defendants, including each of their past and present successors, subsidiaries, parents, holding companies, related or affiliated companies and divisions, assigns, joint ventures, temporary staffing agencies who assigned contingent or temporary workers to any of Defendants' offices, and any individual or entity who could be jointly liable to the Covered Individuals, as well as all of these persons' and entities' past or present shareholders, owners, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, re-insurers, fiduciaries, successors, and assigns, both individually and in their official capacities, and persons acting by, through, under, or in concert with any of these persons or entities ("**Released Parties**") from any and all known or unknown claims that were asserted or could have been asserted in the First Amended Complaint in the Action or arising from the same factual predicate, whether asserted under state, federal, or local law, that arose at any time through the date of approval and entry of the proposed Decree, including claims for gender discrimination (including, but not limited to pay discrimination and promotion discrimination), and retaliation for complaining about gender

1   discrimination in violation of FEHA (Government Code section 12940, subdivisions (a), (j), and (h));

2   gender-based harassment, and retaliation for complaining about gender harassment in violation of FEHA

3   (Government Code section 12940, subdivisions (a), (j), and (h)), and Title VII of the Civil Rights Act of

4   1964 and Title I of the Civil Rights Act of 1991; waiver of rights, forums, or procedures and release of

5   claims in violation of Government Code sections 12953 and 12964.5, and Labor Code section 432.6;

6   aiding and abetting violations of FEHA in violation of Government Code sections 12940, 12948, 12975,

7   and Civil Code section 51.9; failure to prevent gender-based discrimination, harassment, and retaliation

8   in violation of the Fair Employment and Housing Act (Government Code section 12940, subdivision (k)

9   and Code of Regulations, Title 2, sections 11021-11023); failure to maintain adequate records in

10  violation of California law (Government Code section 12946 and Code of Regulations, Title 2, section

11  11013); gender discrimination because of sex in violation of the California Equal Pay Act (Labor Code

12  section 1197.5, subdivisions (a) and (k), and Government Code section 12930, subdivisions (f)(5)).

13         52.    Covered Individuals:  A Covered Individual must voluntarily choose to deposit or cash

14  her Total Individual Payment, as described in Section VII (after receiving Notice of Settlement,

15  substantially in the form attached hereto as Exhibit A), to release any individual claims.  Covered

16  Individuals who choose to opt in by accepting their Total Individual Payment will release claims

17  consistent with the individual release form that is attached hereto as Exhibit B ("**Covered Individual**

18  **Release**").

19         53.    This Decree does not resolve any administrative complaints that are either (a) filed after

20  the date this Court enters the Consent Decree or (b) not released under this Decree.  CRD reserves all

21  rights to proceed regarding matters not covered in this Decree.  Each individual release pursuant to

22  Paragraph 52 encompass only those claims covered in the Covered Individual Release, and nothing

23  more.

24         54.    This Decree in no way affects CRD's rights or authority regarding issues or complaints

25  outside the scope of this Decree.  For example, CRD maintains the power to bring, process, investigate,

26  or litigate other complaints that later arise against Defendants in accordance with standard procedures

27  and authorities.  This Decree shall in no way hinder or affect a real party in interest's right to file a

28

[PROPOSED] CONSENT DECREE

complaint with CRD or any other applicable agency, or to participate in a government investigation or CRD's investigation of and determination into such complaints.

## X.    SPECIFIC INJUNCTIVE RELIEF

55.    Activision Blizzard agrees to implement the following measures for a period of three years from the date of approval of this Decree.  Defendants shall bear the costs associated with this relief, including paying the Consultant.

    a.    <u>Selection of Consultant</u>:  Within forty-five (45) days of approval of the Decree, a Consultant will be mutually selected by the Parties to evaluate Activision Blizzard's implementation of the terms of agreed-upon injunctive relief, as set forth in Paragraph 55(b).

    b.    <u>Report and Recommendations</u>:  Within sixty (60) days of selection of the Consultant, the Consultant will prepare a report that describes the scope and manner of the Consultant's analysis of, and contains any findings and recommendations regarding, Activision Blizzard's practices for complying with this injunctive relief.  In the report, the Consultant will:

        i.    Evaluate and recommend improvements, if any, as to the clarification of minimum standards and preferred qualifications for applicants for the job codes used by the named Defendant entities only;

        ii.    Evaluate and recommend a specific policy around leveling of roles used for new hires and promotional opportunities by the named Defendant entities only;

        iii.    Evaluate and recommend a new-hire compensation offer work-up form or electronic process to document new hire compensation decisions for the named Defendant entities only; and

        iv.    Recommend a validated performance evaluation process, which shall include publication of promotion opportunities internally to all staff through Defendants' intranet and externally through adequate avenues of outreach.

    c.    <u>Commitment to Prevention of Discrimination</u>:  Based on the review described in Paragraph 55(b), the Consultant will report to CRD its recommendations and whether

Defendants have agreed to implement the recommendations. If Defendants reject any of the Consultant's reasonable recommendations, Defendants shall provide CRD with their reasons, and will engage with CRD in good faith to identify and implement mutually acceptable and effective measures consistent with the best practices of other similar high-performing companies. The Parties' failure to reach agreement on any recommendation by the Consultant will not be considered a material breach of the Decree. This term shall be inapplicable if the Consultant does not recommend any additional measures or modifications to Defendants' existing practices.

d. <u>Outreach, Inclusion, and Retention</u>: Defendants will continue their efforts regarding inclusion of underrepresented communities in recruitment efforts for qualified candidates. At least forty-five (45) days before implementing any changes in current efforts in this regard during the duration of the Decree, Defendants will notify the Consultant and CRD and will consider their views and recommendations, if any, on such changes.

e. <u>Training</u>: Defendants agree to review their training materials for California employees to ensure compliance with (i) any policy modifications resulting from the Consultant's review and (ii) California Code of Regulations, Title 2, section 11024, and to incorporate in good faith any training modifications and/or additions recommended by the Consultant. CRD agrees that it will negotiate with the EEOC to find a resolution should the Consultant recommend a training modification that conflicts with a recommendation made by the EEO Consultant under the consent decree in the EEOC Action.

f. <u>Commitment to Transparency</u>:

    i. Except where compensation is not negotiable, Defendants will provide written disclosure to the applicant at the beginning of the hiring and promotion process that compensation is negotiable.

    ii. Defendants acknowledge that their workers have rights to voluntarily communicate with the government about any matter, to file or pursue a civil action or complaint, and to notify any state agency, other public prosecutor, law enforcement agency, or any court or other governmental entity of any potentially

unlawful employment practice, and will not intentionally interfere with the exercise of such rights.

g. <u>Non-compliance</u>:  Any material violation of these requirements by Defendants will be a violation of the Decree.

## XI.  **ATTORNEYS' FEES AND COSTS**

56.    The Parties have agreed to settle CRD's claim for attorneys' fees and costs for $9,125,000.00, and consistent therewith, Defendants will not oppose any request or submission for such a payment of attorneys' fees and costs up to that amount.  At the same time as Defendants transfer the Maximum Settlement Amount to the Settlement Administrator, as described in Paragraph 40, Defendants will deposit the court-approved attorneys' fees and costs payment with the Settlement Administrator, an amount which is in addition to the Maximum Settlement Amount.

57.    CRD is submitting declaration evidence to support approval of the Decree, including this term resolving CRD's claim for attorneys' fees and costs.

58.    The Parties will provide the Court's order approving the Decree, including attorneys' fees and costs, which will specify the payments due to CRD and its counsel Outten & Golden LLP, to the Settlement Administrator. The Settlement Administrator will render these payments to CRD and Outten & Golden LLP on the same date on which the first payments to Covered Individuals are issued consistent with Section VII.

59.    The total payment of attorneys' fees and costs as provided in this Section XI shall constitute full satisfaction of Defendants' and/or any of the Released Parties' obligations to pay amounts to any person, attorney, or law firm for attorneys' fees, expenses, or costs incurred on behalf of CRD arising out of the facts and allegations asserted in the operative Second Amended Complaint or under this Decree.

## XII.   **DATA AND SETTLEMENT ADMINISTRATOR**

60.    <u>Settlement Administrator Selection</u>:  Within thirty (30) days of entry of the Consent Decree, the Parties will select a neutral third-party Settlement Administrator to administer the payments described in Section VII and XI.

61.    <u>Covered Individual Data</u>:  No later than sixty (60) days after the Court enters this Decree,

Defendants will provide to the Settlement Administrator data necessary to complete and send the Notice and calculate Total Individual Payments for each Covered Individual, including any applicable settlement agreement and release for purposes of an Offset Deduction calculation, consistent with Paragraph 41, above.  The Parties shall work in good faith to address and resolve any data deficiencies or dispute regarding data, if they arise.

62.    <u>Settlement Administrator Duties</u>:

a.    The Settlement Administrator will:  (i) mail, email, and text message, to the extent that information is available, the Notices to Covered Individuals using standard procedures to obtain forwarding addresses as needed, and through any additional means agreed to by the Parties; (ii) create and maintain a website, email address, and toll-free telephone number for use by Covered Individuals; (iii) distribute the Total Individual Payments and Redistribution Funds consistent with this Decree; and (iv) establish a Qualified Settlement Fund and be responsible for all tax reporting for all payments made.

b.    Within thirty (30) days of receipt of the relevant data regarding the Covered Individuals, the Settlement Administrator shall calculate the Total Individual Payment and employer's share of taxes for each Covered Individual and shall provide that calculation to the Parties.

c.    As provided in Paragraph 40, within fifteen (15) days of receipt of this calculation from the Settlement Administrator, Defendants will transfer via wire transfer(s) the specified amount to the Settlement Administrator.

d.    Within fifteen (15) days of receipt of funds from Defendants, the Settlement Administrator shall mail the Notice, Consent Decree, and Total Individual Payments to Covered Individuals.

e.    Prior to the mailing, the Settlement Administrator shall update the addresses contained in the Covered Individual Data using the National Change of Address database.

63.    <u>Settlement Administrator Payment</u>:  The Settlement Administrator shall be paid its fees and expenses from the Maximum Settlement Amount.

64.    Within ten (10) days after final disbursement of all funds from the Maximum Settlement

1  Fund, the Claims Administrator will provide counsel for all Parties and file with the Court a declaration

2  providing a final report on the disbursements of all funds from the Maximum Settlement Fund.

3  **XIII.   NO ADMISSION**

4          65.     This Decree and compliance with this Decree shall not be construed in any way as an

5  admission by Defendants of any liability whatsoever, or as an admission by Defendants of any violations

6  of any order, law, statute, duty or contract whatsoever.  Defendants expressly deny that they engaged in

7  any unlawful conduct, including but not limited to subjecting any individual, group, or class of

8  individuals to workplace misconduct including gender-based harassment, related retaliation, or gender

9  discrimination, including as to pay, promotions, and/or terminations.  Defendants deny all allegations of

10  wrongdoing, liability, and damages set forth in CRD's Complaint, First Amended Complaint, and

11  Second Amended Complaint, whether arising under the FEHA, the Labor Code, or analogous federal

12  and local laws, and deny any group or class discrimination or harassment.  The Parties expressly agree

13  that this Decree is not an admission that Defendants engaged in any unlawful conduct, that pursuit of the

14  Action on a group or class basis would be proper under any applicable standard in the Action, or any

15  litigation, or that CRD complied with its statutory pre-filing requirements when it initiated the Action,

16  and that evidence of the stipulation as to Covered Individuals is for settlement purposes only.

17          66.     This Decree and compliance with this Decree shall not be construed in any way as an

18  admission by CRD as to the merits of any claims alleged in the Action.

19  **XIV.   ENFORCEMENT**

20          67.     As requested by the Parties, the Court retains jurisdiction over the Parties to enforce this

21  Decree for the three-year duration of this Decree, and to enforce the terms of the Parties' "Settlement

22  Agreement" dated December 11, 2023.

23          68.     The Parties agree that, prior to initiating any such action to enforce this Decree (if it

24  believes it necessary) or for breach of the Settlement Agreement, they will attempt to obtain voluntary

25  compliance with the Decree or Settlement Agreement.  Any such attempt shall be made by notifying the

26  other party, through their counsel of record, in writing, of the nature of the dispute.  This notice shall

27  specify the particular provision(s) that either party believes has been breached.  The party receiving

28  notice shall have thirty (30) days from the date of the written notice to cure the breach.  The Parties may

extend this period upon mutual consent.

69. After forty-five (45) days, inclusive of the thirty (30) days referenced in the preceding paragraph, have passed from the written notice described above with no resolution or agreement to extend the time, either party may petition the Court for resolution of the dispute, seeking all available relief, including an extension of the term of the Decree or its immediate termination, and/or any other relief that the Court may deem appropriate.

70. Failure of either Party to seek enforcement with respect to any instance or provision of the Decree or Settlement Agreement shall not be construed as a waiver of enforcement regarding other instances or provisions.

## XV. MODIFICATION & SEVERABILITY

71. This Decree, inclusive of Exhibits A and B hereto, the Settlement Agreement, collectively, are the entire agreement and commitments of the Parties with respect to the matters contained herein, except that the Decree supersedes the Settlement Agreement to the extent there are conflicting terms or the terms of the Decree are more specific than any similar terms in the Settlement Agreement. Other than the Parties agreeing in writing to extend a deadline specified in this Decree, no waiver, modification, or amendment of any of this Decree's provisions shall be effective unless made in writing, signed by an authorized representative of CRD and Defendants, and approved by the Court.

72. If any provision(s) of this Decree is found to be unlawful, the Parties shall make good faith efforts to agree upon appropriate amendments to this Decree in order to effectuate the purposes of the Decree. In any event, only such provision(s) found to be unlawful shall be severed, and the remainder of the Decree shall remain in full force in effect.

73. The Parties have cooperated in the drafting and preparation of this Decree. This Decree will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

## XVI. EXECUTION

74. Provided that the Court's approval of this Decree is consistent with its material terms, the Parties and their respective counsel hereby waive any and all rights to appeal from it, including all rights to any appellate proceeding and any extraordinary writ, and the Decree therefore will become non-

appealable at the time it is entered.  The waiver of appeal does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.  If an appeal is taken, the time for consummating this Decree (including making payments under this Decree) may be suspended until such time as the appeal is finally resolved and the Decree becomes final.

75.     The signatories to this Decree confirm that they have the authority to bind the respective Parties identified below to the terms of this Decree, including authority pursuant to Code of Civil Procedure section 664.6, subdivision (b).

76.     This Decree may be executed in counterparts, each of which shall be deemed an original, and which together shall constitute the Parties' single agreement.  Facsimile, email, PDF, and photocopied signatures shall also be deemed original for all purposes.

**IT IS SO DECREED, ADJUDGED, AND ORDERED** this ___ day of _____, 202__.


_____
Honorable Barbara M. Scheper
Judge for the Superior Court of Los Angeles County

23

The undersigned hereby apply for and consent to entry of this Decree:

FOR CALIFORNIA CIVIL RIGHTS DEPARTMENT:

DATED: December 20, 2023

_____
Jamie Crook, Chief Counsel
California Civil Rights Department

FOR ACTIVISION BLIZZARD, INC., BLIZZARD ENTERTAINMENT, INC. AND ACTIVISION PUBLISHING, INC.:

DATED: December 20, 2023

_____
Elena Baca
Paul Hastings LLP

DATED: December 20, 2023

_____
Brad Brian
Munger, Tolles & Olson LLP

[PROPOSED] CONSENT DECREE

# Exhibit A



Superior Court of California, County of Los Angeles
*California Civil Rights Dept. v. Activision Blizzard, LLC, et al.*
Case No. 21-STCV-26571

# Notice of Settlement

## *Authorized by the Superior Court of California, County of Los Angeles*

| | | |
|---|---|---|
| **Are you a woman who worked as an employee or contractor through a temporary staffing agency for an Activision Blizzard company in California at any time between Oct. 12, 2015 and Dec. 31, 2020?** | **There is a $45.75 million settlement of a state lawsuit.**<br><br>**You are being offered a share of settlement and may be entitled to money in exchange for a Release of legal claims.** | **What you should do now:**<br>1. **Read this Notice and enclosed Release.**<br>2. **Decide whether to cash the enclosed check and release claims.** |

Important things to know:

- Accepting the enclosed check and releasing claims is voluntary.

- The enclosed check expires 180 days from the date of the check. You must cash the check within that time if you want to accept the payment and agree to be bound by the enclosed Release.

- If you take no action and do not cash the enclosed check, you will not be bound by the enclosed Release, and your rights will not be affected.

- If you choose not to cash the enclosed check, you can facilitate our recordkeeping by writing "VOID" on it and/or destroying the physical copy, and notifying the Settlement Administrator by email at [email address]. This will facilitate the redistribution of your share of funds to other Covered Individuals.

- You can learn more at: [INSERT CASE LINK].

# Table of Contents

**About This Notice** ............................................................................... **4**

Why did I get this Notice? ...................................................................4

What do I do next? .............................................................................5

**Learning About the Lawsuit** ............................................................. **5**

What is this lawsuit about? ..................................................................5

Why is there a settlement in this lawsuit? ...........................................5

**Learning About the Settlement** ........................................................ **6**

What does the settlement provide? .....................................................6

How do I know if I am part of this settlement? ...................................7

Is CRD my lawyer in this lawsuit? ......................................................7

Do I have to pay the lawyers in this lawsuit? .....................................7

**Deciding What You Want to Do** .......................................................... **7**

What are my options? ..........................................................................7

**Doing Nothing** ..................................................................................... **8**

What are the consequences of doing nothing? ...................................8

**Cashing the Enclosed Check(s)** .......................................................... **9**

What are the consequences of cashing the enclosed check(s)? ...............9

How was my payment calculated? ......................................................9

**Choosing Not to Participate** ............................................................. **11**

What if I don't want to be part of this settlement? ..............................11

**Second Payment** ................................................................................ **11**

Is the enclosed check all the money I will receive for the settlement? .....11

**Key Resources** ................................................................................... **11**

How do I get more information? ........................................................11

# About This Notice

## Why did I get this Notice?

This Notice is to tell you about the settlement ("Consent Decree") in the lawsuit *California Civil Rights Department v. Activision Blizzard, Inc., et al.*, brought by the California Civil Rights Department ("CRD") on behalf of the female employees and contract workers provided by temporary staffing agencies who performed services for Activision Blizzard, Inc., Activision Publishing, Inc., Blizzard Entertainment, Inc., or one of their subsidiaries ("Activision Blizzard") in California (the "Lawsuit").

**You received this Notice because records show that you were a female employee or a worker assigned by a temporary staffing agency who worked at Activision Blizzard in California at some point between October 12, 2015 and December 31, 2020 (the "Covered Period"). This means that you are a part of the group of people covered by the Consent Decree, called the "Covered Individuals."** "Female" is defined as any person who self-identified to Activision Blizzard or the temporary staffing agency that employed them as a cisgender woman or transgender woman during the Covered Period.

This Notice gives you a summary of the terms of the Consent Decree, explains what rights Covered Individuals have, and helps Covered Individuals make informed decisions about what action to take.

**Enclosed with this Notice is a settlement check being offered to you in exchange for a Release of certain claims you may have that CRD sought to advance on behalf of all female employees and female temporary staffing workers in this lawsuit. The release is also enclosed. If you accept this offer by cashing the enclosed check, you are agreeing to the terms of the enclosed Release.**

**This Notice is an important legal document, and we recommend that you read all of it.** If you have questions or need assistance, please go to [Administrator website] or call [Administrator phone number].

## What do I do next?

Read this Notice to understand the Consent Decree. Then, decide if you want to:

| ACCEPT PAYMENT AND RELEASE | Accept the settlement payment. Cash or deposit the enclosed check. You will be bound by the enclosed Release. |
|---|---|
| DO NOTHING | Get no payment. You will not be bound by the enclosed Release. As a courtesy, to facilitate our recordkeeping, you can write "VOID" on the check and/or destroy the physical copy and notify the administrator at [email address]. |

Read on to understand the specifics of the Consent Decree and what each choice would mean for you.

# Learning About the Lawsuit

## What is this lawsuit about?

Through this lawsuit, CRD alleged claims under California law for unlawful employment practices based on sex against Activision Blizzard. Activision Blizzard denies that it engaged in any of the unlawful employment practices as alleged by CRD at any time.

## Why is there a settlement in this lawsuit?

No court or jury has decided this case in favor of either side and Activision Blizzard denies the allegations. In December 2023, the parties agreed to settle, which means they have reached an agreement to resolve the lawsuit. Both sides want to avoid the risk and expense of further litigation.

The settlement agreement is memorialized in a document called the Consent Decree. A copy of the

**What is a consent decree?**
A consent decree is a type of settlement process that resolves a case under the supervision of a judge.

5

Consent Decree is enclosed with this Notice. The settlement is on behalf of CRD and any Covered Individual who chooses to participate by cashing their settlement check.

# Learning About the Settlement

## What does the settlement provide?

Activision Blizzard agreed to pay $45,750,000 into a settlement fund to resolve the Lawsuit. This money will be divided among the Covered Individuals as described below and will also be used to pay for the cost of administering this settlement. Any unused funds will be redistributed to everyone who participates in the settlement, and then any remainder will be donated to charitable organizations that have a primary mission to promote employment rights for workers in California, or advance the interests of women workers in technology industries.

Covered Individuals who cash or deposit the enclosed check will "release" their claims as part of the settlement, which means they cannot sue Activision Blizzard for the issues that were raised in the lawsuit. The full details of the release are enclosed with this Notice in a document called "Release."

The settlement also provides for Activision Blizzard to pay an additional, separate amount of $9,125,000 to settle CRD's claim for attorneys' fees and costs.

In addition, Activision Blizzard has committed to implement certain measures for the next three years, including: publishing information about job qualifications and promotional opportunities and working with a consultant, to be mutually selected by the Parties, who will review Activision Blizzard's implementation of these measures and who may recommend possible improvements in compensation, leveling, and promotion practices.

## How do I know if I am part of this settlement?

If you were a female employee of Activision Blizzard who worked in California at any time between October 12, 2015 and December 31, 2020, you are a Covered Individual who is part of this settlement.

If you were a female employee of a temporary staffing agency

who worked for Activision Blizzard in California for at least 90 days at any time between October 12, 2015 and December 31, 2020, you are a Covered Individual who is part of this settlement.

If you participated in the claims process in *U.S. Equal Employment Opportunity Commission v. Activision Blizzard, Inc., et al.*, U.S.D.C. C.D. Cal. Case No. CV 21-7682-DSF (JEMx), that does not prevent you from being a Covered Individual in this settlement, but your recovery in this settlement may be reduced by an offset pursuant to the Consent Decree's terms.

## "Female" is defined as any person who self-identified to Activision Blizzard or to an assigning temporary staffing agency as a cisgender woman or transgender woman between October 12, 2015 and December 31, 2020.

## Is CRD my lawyer in this lawsuit?

No, CRD is not your lawyer in this lawsuit. CRD is the plaintiff in this lawsuit, and it represents the interests of the state of California, but it does not represent you or other Covered Individuals specifically.

## Do I have to pay the lawyers in this lawsuit?

No, CRD and Activision Blizzard negotiated for the payment of CRD's attorneys' fees and costs separately. No money has been deducted from your allocated payment for CRD's attorneys' fees and costs.

# Deciding What You Want to Do

## What are my options?

You have two options.

One option is to deposit or cash the enclosed check within 180 days of the check's date to receive payment and be bound by the settlement and Release terms.

The other option is to do nothing. In that case, after 180 days of

7

the check's date, you are deemed to have chosen not to participate. You can facilitate our recordkeeping by writing "VOID" on the check and/or destroying the physical copy and notifying the Settlement Administrator at [email address]. This will facilitate the redistribution of your share of funds to other Covered Individuals.

This chart shows the effects of each option:

|  | . . .do nothing and/or void the check? | . . .timely cash or deposit the enclosed check? |
|---|---|---|
| Can I receive settlement money if I . . . | NO | YES |
| Am I bound by the terms of the enclosed Release if I . . . | NO | YES |
| Can I pursue my own case if I want to. . . | MAYBE[1] | NO |

# Doing Nothing (Not Accepting the Settlement Check)

## What are the consequences of doing nothing?

If you do nothing, you will not get any money. You will also not be bound by the enclosed Release. This means you may able to start, continue, or be part of any other lawsuit asserting any rights you may have for claims against Activision Blizzard covered in the enclosed Release.

Even if you choose not to participate in the settlement by rejecting the monetary payment, the non-monetary measures provided for in the Consent Decree will still occur on behalf of all Activision Blizzard workers.

Lastly, as a courtesy, to facilitate our recordkeeping, you can

---

[1] There are strict timelines for bringing individual claims. If you are considering bringing individual claims, you should promptly consult with a lawyer at your own expense.

write "VOID" on the check and/or destroy the physical copy and notify the Settlement Administrator at [==email address==].

# Accepting By Cashing the Enclosed Check

## What are the consequences of cashing or depositing the enclosed check?

If you cash or deposit the enclosed check before it expires (within 180 days of the check's date), you will receive your settlement payment. You will also be bound by the enclosed Release. You will not be able to start, continue, or be part of any other lawsuit that asserts any of the claims you Release.

If you do not want to be bound by the enclosed Release, do NOT deposit or cash the check.

## How was my payment calculated?

Records related to your employment/assignment with Activision Blizzard show the following:

| | |
|---|---|
| Your Name | |
| Dates of Work | |
| Job Title(s) | |
| Name of Employer(s) | |
| Status as Employee or Contractor | |

**If you believe any of the information in the boxes above is wrong and you wish to dispute it, please contact the Settlement Administrator immediately _____ and do not cash your check.**

Based on the above information and relevant employment records, your payment amount is calculated as follows:

| | |
|---|---|
| Number of Points for Tenure Payment | < > |
| Minimum Payment | $ < > |

| Tenure Payment | $ <    > |
|---|---|
| Calculated Offset Deduction | $ <    > |
| Reason for Offset Deduction | |
| Reallocation Payment | $ <    > |
| Total Gross Individual Calculation (before required tax deductions) | $ <    > |

| Total Net Individual Payment (net, after taxes) | $ <      > |
|---|---|

- **Minimum Payment**:  Each Covered Employee received the same minimum payment of $____, and each Covered Contractor received the same minimum payment of $____.

- **Tenure Payment**:  In addition to the Minimum Payment, each Covered Individual's Tenure Payment was calculated based on the number of pay periods they worked for Activision Blizzard as an employee or contractor in California between October 12, 2015 and December 31, 2020. Pay periods worked as an employee counted twice as much as pay periods worked while a contractor.

- **Offset Deduction**:  If you previously entered into a settlement agreement and release with Activision Blizzard before [DATE CD ENTERED] that covers any of the claims being resolved in this lawsuit, then twice the amount you previously received is deducted from your payment (up to the amount of your Minimum Payment), to reflect the fact that you might not be entitled to receive any money due to your release. The amount that is subtracted for each person is called the Offset Deduction.

- **Reallocation**:  The sum of all Offset Deductions has been reallocated to all Covered Individuals (whether or not they had an Offset Deduction) proportionately. The exact formula for the reallocation is described in the Consent Decree.

- **Total Gross Individual Calculation**:  Each Covered Individual's "Total Gross Individual Calculation" equals (1) her Minimum Payment, plus (2) her Tenure Payment, minus (3) her Offset Deduction, if any, plus (4) her Reallocation Payment, if any.

10

- **Total Individual Payment (Net)**:  Of the Total Gross Individual Calculation amount, 50% will be treated as wages and subject to withholding taxes. Your Total Individual Payment takes into account these required tax deductions as reflected on the check stub. If you accept the enclosed check, you will receive tax reporting information (W2 and/or 1099) after the distributions are finalized.

# Choosing Not to Participate

## What if I don't want to be part of this settlement?

You do not have to be part of this settlement.

If you do NOT deposit or cash the enclosed check, you will not be a part of the settlement or receive payment. However, you will not be bound by anything that happens in this lawsuit and may be able to file your own case.

# Potential Second Payment

## Might I receive more money than the enclosed check?

Possibly. Any money that is not accepted by the deadline (within 180 days of the check's date) will be distributed through a second payment to all Covered Individuals who accepted this first payment. That second payment will be made proportionately to all Covered Individuals who accept this first payment, consistent with the Consent Decree.

# Key Resources

## How do I get more information?

This Notice is a summary of the settlement contained in the Consent Decree. A copy of the Consent Decree is enclosed. It can also be found here. To find additional information:

- visit the case website maintained by CRD at [insert link]

- visit the case website maintained by the Settlement Administrator at [insert link]

- access the [Insert court record system link] online or by visiting the Clerk's office of the Court (address below).

| California Civil Rights Department | California Civil Rights Department<br>Call CRD at (833) 525-4333<br>Email CRD at blizzard@calcivilrights.ca.gov |
|---|---|
| Settlement Administrator | Settlement Administrator<br>[Insert Address]<br>[Insert Phone Number] |
| Court (DO NOT CONTACT WITH QUESTIONS) | Superior Court of California,<br>County of Los Angeles<br>Stanley Mosk Courthouse, Dept. 30<br>111 N Hill St, Los Angeles, CA 90012 |

Exhibit B

## RELEASE OF CLAIMS IN
## GOVERNMENT ENFORCEMENT ACTION
*California Civil Rights Department v. Activision Blizzard, Inc. et al.*
Case No. 21STCV26571 (Los Angeles Superior Court)

This Release of Claims is a legal document. This document states that in return for Activision Blizzard, Inc., Blizzard Entertainment, Inc., and Activision Publishing, Inc. (collectively "Activision Blizzard") paying you money and agreeing to other relief, the California Civil Rights Department ("CRD") will resolve a lawsuit that it brought against Activision Blizzard on your behalf and on behalf of other female workers in *California Civil Rights Department v. Activision Blizzard, Inc. et al.*, Case No. 21STCV26571.

The asserted claims include claims arising under the Fair Employment and Housing Act (Gov. Code, § 12900 *et seq.*) and the California Equal Pay Act (Labor Code, § 1197.5). The Consent Decree (enclosed with this notice packet and available at [Settlement Administrator's web portal]) is the settlement agreement between CRD and Activision Blizzard ("Settlement").

You should take sufficient time to look at this document, to talk with others about the document, including an attorney if you choose, and no one can pressure you into agreeing to the terms in this the document.

Full participation in this Settlement means accepting the enclosed payment and releasing certain claims you may have against Activision Blizzard. Those claims are listed below.

By fully participating in the Settlement, you hereby fully and finally release Activision Blizzard, including each of their past and present successors, subsidiaries, parents, holding companies, related or affiliated companies and divisions, assigns, joint ventures, both individually and in their official capacities, as well as their past or present shareholders, owners, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, re-insurers, fiduciaries, successors and assigns, and any individual or entity who could be jointly liable, and persons acting by, through, under or in concert with any of these persons or entities ("Released Parties") from the claims asserted in *California Civil Rights Department v. Activision Blizzard, Inc. et al.*, Case No. 21STCV26571, that arose from October 12, 2015, through December 31, 2020.

The claims you will release if you accept the enclosed payment include: claims for sex discrimination and harassment (Gov. Code, § 12940, subd. (a) and (j)); constructive discharge (Gov. Code, § 12940, subd. (a)); retaliation for complaining about practices that are protected by the Fair Employment and Housing Act (Gov. Code, § 12940, subd. (h) and Code of Regulations, Title 2, section 11021); failure to prevent these alleged unlawful employment practices (Gov. Code, § 12940, subd. (k)); waiver of rights, forums, and releases of claims (Gov. Code, § 12953 and Lab. Code, § 432.6); and

unequal pay (Lab. Code, § 1197.5) ("Released Claims").

You understand that in exchange for Monetary and Injunctive Relief as set forth in the Consent Decree (available at [Claims Administrator's web portal]), CRD will release claims brought on your behalf and on behalf of other female workers, and the State of California. You understand that you will receive at least $_____, which includes your share of the Monetary Relief, as specified in the Consent Decree. You also may benefit from the Injunctive Relief as specified in the Consent Decree. You may receive a second payment later if there is money in the settlement fund available for redistribution.

By accepting this payment, you are fully participating in the Settlement, and you agree to this Release. You understand that you have had full opportunity to consider and understand the terms and to consult with your advisors and seek legal advice, should you choose to do so. You understand that you are making the choice to freely agree to participate in this Settlement and Release.

**If you endorse, cash, or deposit the enclosed settlement payment check, you ill be indicating your agreement to this Release and your full participation in the Settlement.**

**You are not re uired to return this form or to sign any other document in order for your release or CRD's release to be valid.**

**As explained in the accompanying notice, in order to participate in the Settlement you must deposit or cash the enclosed payment ithin 180 days of the date hen it as issued. If you do not deposit or cash the enclosed payment ithin 180 days, the payment ill be stopped, you ill receive no money from this Settlement, and you ill be deemed to have chosen <u>not</u> to participate.**